## BABCOCK v. SWARTWOUT et al.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

PARTNERSHIP (§ 311*)—DISSOLUTION—CONTRACT—CONSTRUCTION.

By a partnership dissolution agreement, defendants, in consideration of plaintiff's interest in the firm, agreed to pay him an amount equal to $5,000 per annum, or such less amount as might be earned by them as profits from their business in equal monthly installments during plaintiff's life. *Held*, that the contract contemplated a settlement at the end of each year, and, though the payments were to be made monthly in advance, yet, if at the end of the year profits had not been made, plaintiff was not entitled to anything and was bound to refund advance payments made during that year.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 311.*]

Ingraham, P. J., and Miller, J., dissenting in part.

Submission of controversy between Courtlandt Babcock and Richard H. Swartwout and another. Judgment for defendants.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLNG, JJ.

Walter C. Low, for plaintiff.
Scott McLanahan, for defendants.

McLAUGHLIN, J. This case comes before the court on an agreed statement of facts, by which it appears: That the parties were formerly copartners doing business in the city of New York under the firm name of Babcock, Swartwout & Appenzellar. That on the 20th of October, 1905, the partnership was dissolved by mutual consent, as of the 1st of November, 1905, Babcock retiring therefrom. That, under the dissolution agreement, Swartwout and Appenzellar agreed to pay Babcock, "for his interest in the good will of said copartnership, an amount equal to five thousand ($5,000) dollars per annum, or such less amount as may be earned by them for profits from their business. * * * The sum of five thousand ($5,000) dollars per annum aforesaid, or such less amount as may equal the profits as aforesaid shall be paid by the said Richard H. Swartwout and Paul Appenzellar unto the said Courtlandt Babcock, or his assigns, in equal monthly installments on the first day of each and every month of each and every year during the life of said Courtlandt Babcock." That from November 1, 1909, to the 1st of July, 1910, the monthly installments of $416.67 were paid; but the defendants refused to pay anything for the months of July, August, September, and October following. That Swartwout and Appenzellar earned in their business a profit of $1,899, between November 1, 1909, and December 1, 1909; but after December 1, 1909, up to July 1, 1910, the business was conducted at a loss. That between November 1, 1909, and November 1, 1910, the business was also conducted at a loss. And that between November 1, 1905, when the contract of dissolution was made, and November 1, 1910, profits were made exceeding $25,000.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff claims he is entitled to be paid, under the contract, $416.67 each month so long as he shall live, and such payment is not dependent upon the profits of the business per month or per annum, and, inasmuch as the aggregate profits earned by the firm from the 1st of November, 1905, down to July 1, 1910, exceeded $416.67 per month, that the defendants' failure to pay, on the 1st of July, 1910, and each month thereafter, to November 1st of that year, constituted a breach of the agreement which entitles him to a judgment for the installments for those months.

Defendants claim that the payments to plaintiff were dependent upon the earnings of profits each year, and as there were no profits earned by defendants for the year beginning the 1st of November, 1909, and ending November 1, 1910, plaintiff was not entitled to any payments that year, and inasmuch as defendants paid to him $3,-333.28 between November 1, 1909, and July 1, 1910, they are entitled to recover that amount from the plaintiff as money paid under a mistake of fact.

The question to be determined turns upon the construction to be put upon the dissolution agreement. I am of the opinion that the words "five thousand dollars per annum" indicate that what the parties to the agreement had in mind was the profits made per year, and at the end of each year a determination was to be made and a settlement had. The contract, however, provides for monthly payments in advance; but, notwithstanding that fact, it seems to me that the parties contemplated that, if at the end of the year profits had not been made, then the plaintiff was not entitled to anything, and any advance payments which had been made that year he was to refund to the defendants. It would be an unreasonable construction of the agreement to hold that monthly installments must be paid during the term of the plaintiff's life, irrespective of whether profits had been made.

This view is sustained in some respects by Jennery v. Olmstead, 90 N. Y. 363. There the defendant was appointed general actuary of a bank, and served in that capacity for five years under an agreement by which he was to receive, as compensation for his services, "such sum or sums from the net profits of the institution as such profits, after paying all incidental expenses, may warrant, not to exceed $1,-000 per annum." It was held that the agreement was to pay that sum if earned in annual payments out of the profits of the preceding year; if no profits were earned, he was to receive no compensation, and no charge could be made on future savings; and that therefore, in fixing the sum to which he was entitled, the profits in one year could not be reduced by the losses in a subsequent year. Here the plaintiff was to be paid $5,000 per annum, "or such less amount as may equal the profits as aforesaid." Such payment was to be made "in equal monthly installments on the first day of each and every month." It would hardly be contended that if no profits were made during the first 11 months, but profits were made the twelfth month exceeding $5,000, plaintiff would not be entitled to the $5,000 stipulated to be paid. This would be an unreasonable construction of the agreement,

and one which I do not believe the parties intended. But it would be just as unreasonable to hold, because the defendants paid the monthly installments during a portion of the year on the assumption that profits would be made, that they could not require the plaintiff to pay them back in case profits were not made for the entire year. Such payments were made under a mistake of fact. Such mistake was predicated upon a false assumption, viz., that the year would show profits equal to the amount of the payments. Instead of showing profits, there was a loss. Defendants having made these payments under a mistake of fact, they ought in justice to recover them. The construction thus put upon the agreement is what I think the parties clearly contemplated, and it does justice to both of them.

If these views be correct, then it follows that the defendants are entitled to judgment against the plaintiff for $3,333.28 and interest thereon from November 1, 1909, together with the costs of the action.

LAUGHLIN and DOWLING, JJ., concur.

INGRAHAM, P. J. I concur with Mr. Justice McLAUGHLIN in the construction of this agreement so far as to hold that the right of the plaintiff to receive the $5,000 a year mentioned in the agreement depended upon profits received in each year, and that in any year in which the profits did not exceed $5,000 plaintiff would not be entitled to a greater amount than the actual profits for that year. I do not, however, agree that the defendant is entitled to an affirmative judgment against the plaintiff for any sum of money paid during a year in which there were no profits. The parties, being of full age, were justified in making such a contract as they pleased. There was no provision in this contract which contemplated a repayment of any amount paid under the contract to the plaintiff by the defendant. What the defendant agreed to do was to pay the sum of $5,000 per annum, or such less amount as would equal the profits of the business "in equal monthly installments on the first day of each and every month of each and every year during the life of the said Courtlandt Babcock (plaintiff)." If at the commencement of the year there were no profits, this monthly payment could not be enforced, and the defendant would have been quite justified in refusing to make any payment until the profits had been received. On the other hand, they could make payments anticipating the existence of profits; but such payments would be voluntary payments, which, as I view it, imposed no obligation upon the plaintiff to repay. If at the commencement of any one year no profits were realized, the defendants would have been justified in refusing to make the payments. The whole of the $5,000, however, would have been due sometime during the year if profits to that amount were realized. On the other hand, if profits had been realized in the first half of the year upon which the defendants had paid the stipulated monthly installment, the mere fact that subsequent losses reduced those profits so that there was not a total profit for the year of $5,000, there is certainly nothing in the agreement as I read it that authorized the defendant to recover from the

plaintiff the sums of money that they had paid to him based upon an assumption that there were profits to which he was entitled.

I think, therefore, that the defendant was entitled to a judgment on the submission but without an affirmative judgment against the plaintiff.

MILLER, J., concurs.